UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| MILES DISTRIBUTORS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:04-CV-561 CAN |
| | ) | |
| SPECIALTY CONSTRUCTION BRANDS, INC., | ) ) | |
| | ) | |
| Defendant. | ) | |

**ORDER AND OPINION**

Plaintiff Miles Distributors, Inc. filed this action on August 27, 2004, alleging that Defendant Specialty Construction Brands, Inc. violated Section One of the Sherman Antitrust Act, intentionally interfered with a prospective business advantage, and breached a duty to an agent. Defendant filed a counterclaim for breach of contract for goods sold and delivered. On October 3, 2005, Defendant filed a motion for summary judgment. This Court conducted oral arguments on Defendants' motion on February 15, 2006. This Court may rule on Defendant's motion pursuant to the parties' consent and 28 U.S.C. § 636(c).

**I.    RELEVANT BACKGROUND**

   A.    Factual Background

This case is rather straightforward because the parties agree to the following relevant facts. Defendant specializes in the manufacture of "setting materials" such as grout, mortar, and mastics. Plaintiff began distributing Defendant's products in 1969. The Defendant does not distribute a price list to its distributors, nor does it suggests the prices that the distributors should charge. Rather, it is up to the independent distributors to set the prices on the products.

Beginning in 2002, Defendant started receiving complaints from its other distributors about Plaintiff's price margins on a particular product. A few of the distributors expressed concerns that Defendant's product may not be worth promoting anymore. Some of the distributors were even considering bringing in other product lines to compete with Defendant's products. (Def. Exh. 8).

In 2003, Defendant notified Plaintiff that Plaintiff's pricing structure was causing problems in the Indianapolis market. In the fall of 2003, Defendant expressed a desire for Plaintiff to raise its prices. However, there was no discussion of what the new prices should be and Plaintiff did not raise its prices.

Threatened with the possibility of losing key distributors, or having distributors introduce competing product lines in their stores, in February 2004, Defendant began exploring the option of terminating Plaintiff. In order to help evaluate the situation and the effect of the termination, the strategic area sales managers had separate discussions with some of the other distributors to ascertain what each would do to increase the volume of sales of Defendant's product if Plaintiff was terminated. The remaining distributors told Defendant that they would re-emphasize Defendant's product line to compete against Plaintiff and do a market blitz after the termination to try to recapture Plaintiff's share of the market.

In May 2004, Defendant came up with a plan to terminate Plaintiff. On June 17, 2004, Defendant sent Plaintiff a letter informing Plaintiff that Defendant would not accept any purchase orders for shipment of its products after August 18, 2004. The letter stated that Defendant "decided to consolidate our distribution channels in the Midwest, and have made the difficult decision to cease our direct sales to your company." (Def. Exh. 14).

Prior to the termination, Plaintiff ordered and accepted a shipment of Defendant's product. However, to this date, Plaintiff has not paid for the product that it received.

B.  Procedural Background

On August 27, 2004, Plaintiff filed a complaint against Defendant alleging that Defendant committed a *per se* violation of Section One of the Sherman Antitrust Act, 15 U.S.C. § 1, by illegally fixing prices. On May 9, 2005, Plaintiff filed an amended complaint re-alleging Count I, and also asserting state law claims for interference with a prospective business advantage and breach of duty to an agent. Defendant asserted a counterclaim for breach of contract with respect to goods sold and delivered.

On October 3, 2005, Defendant filed a motion for summary judgment on all three counts of Plaintiff's complaint and on its counterclaim for breach of contract. Pursuant to both parties' requests, on February 15, 2006, this Court held an in-court hearing on Defendant's motion. Based upon the parties' briefs and the arguments at the hearing, the only disagreement in this case is whether Plaintiff has provided sufficient facts to establish that Defendant agreed with the distributors as to the price or price levels to be charged after Plaintiff's termination. Plaintiff contends it has provided sufficient facts. Defendant asserts that Plaintiff has failed to meet this burden. Thus, the question this Court must resolve is whether Plaintiff has provided sufficient evidence upon which a reasonable jury could find that Defendant agreed with the distributors as to the price or price levels to be charged after Plaintiff's termination.

**II.  SUMMARY JUDGMENT STANDARD**

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

3

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Lawson v. CSX Transp., Inc., 245 F.3d 916, 922 (7th Cir. 2001). In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the nonmoving party as well as draw all reasonable and justifiable inferences in favor of that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); King v. Preferred Technical Group, 166 F.3d 887, 890 (7th Cir. 1999). To overcome a motion for summary judgment, the nonmoving party cannot rest on the mere allegations or denials contained in its pleadings. Rather, the nonmoving party must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. Celotex v. Catrett, 477 U.S. 317, 322-23 (1986); Robin v. Espo Engineering Corp., 200 F.3d 1081, 1088 (7th Cir. 2000). Where a factual record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing Bank of Ariz. v. Cities Services Co., 391 U.S. 253, 289 (1968)).

### III. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S ANTITRUST CLAIM

#### A. Applicable Law

Section One of the Sherman Antitrust Act states that "every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. A successful claim under Section One requires proof of three elements: 1) a contract, combination, or conspiracy; 2) a resultant unreasonable restraint of trade in the relevant market; and 3) an accompanying injury. Denny's Marina, Inc. v. Renfro Productions, Inc., 8 F.3d 1217, 1220 (7th Cir. 1993). There are

two approaches to evaluate claims under Section One: a *per se* illegal or a "rule of reason" approach. If a plaintiff establishes that the defendant engaged in behavior that was *per se* illegal, the plaintiff need not prove an accompanying injury. The parties agree that Plaintiff only alleges that Defendant's actions were *per se* illegal. Thus, this Court need not examine Defendant's conduct under the rule of reason analysis.

A horizontal agreement to fix prices is *per se* illegal. A horizontal agreement occurs when the source of a conspiracy is a combination of distributors. Valley Liquors, Inc. v. Renfield Importers, Ltd., 822 F.2d 656, 660 (7th Cir. 1987) (note 5). See also Rossi v. Standard Roofing, 156 F.3d 452, 462 (3d Cir. 1998) (stating a conspiracy is horizontal in nature when a number of competitor firms agree with each other and at least one of their common suppliers or manufacturers to eliminate their price-cutting competition by cutting his access to supplies). A facially vertical restraint imposed by a manufacturer only because it has been coerced by a "horizontal cartel" agreement among his distributors is in reality a horizontal restraint. Business Electronics Corp. v. Sharp Electronics Corp., 485 U.S. 717, 730 (U.S. 1988) (note 4). A restraint is horizontal not because it has horizontal effects, but because it is the product of a horizontal agreement. Id.

An agreement between a manufacturer and a distributor is usually a vertical agreement. A vertical agreement may be *per se* illegal. Center Video Indus. Co. v. United Media, Inc., 995 F.2d 735, 739 (7th Cir. 1993). A vertical restraint however, is not *per se* illegal unless it includes some agreement on price or price levels. Business Electronics, 485 U.S. at 725-30. Permitting an agreement to be inferred merely from the existence of complaints, or even from the fact that termination came about "in response to" complaints, could deter or penalize perfectly

5

legitimate conduct. Monsanto Co. v. Spray-Rite Serv. Corp., 465 U.S. 752, 763 (U.S. 1984). Complaints about price cutters "are natural -- and from the manufacturer's perspective, unavoidable -- reactions by distributors to the activities of their rivals." Id. Such complaints, particularly where the manufacturer has imposed a costly set of nonprice restrictions, arise in the normal course of business and do not indicate illegal concerted action. Id. Thus, something more than evidence of complaints about price is needed to prove illegal price fixing. Id.

    B.    Analysis

        1.    Vertical versus Horizontal Agreement

In its motion for summary judgment, Defendant asserts that its actions were nothing more than a vertical agreement to terminate a price cutter. Furthermore, Defendant contends that Plaintiff has failed to provide any evidence that Defendant agreed with the distributors on the price or price levels to be charged after Plaintiff's termination. As a result, Defendant alleges that, under Business Electronics, summary judgment is appropriate on this issue. In response, Plaintiff asserts that this is not a vertical agreement, but rather a horizontal agreement, which is *per se* illegal. Plaintiff also contends that even if this is a vertical agreement, it has provided sufficient evidence to establish that there was an agreement as to the price or price levels to be charged after Plaintiff's termination.

At the hearing, Defendant responded to Plaintiff's allegations by arguing that it did not matter whether the agreement was vertical or horizontal because Plaintiff still had to provide some evidence of an agreement with the distributors as to the price or price levels to be charged after the termination. Defendant cited Business Electronics and Valley Liquors, Inc. v. Renfield Importers, Ltd., 822 F.2d 656 (7th Cir. 1987) in support of this proposition.

In Business Electronics, the Supreme Court determined that a vertical agreement was not *per se* illegal unless the plaintiff could provide evidence of an agreement between a manufacturer and the distributors on the price or price levels to be charged upon termination.  In Valley Liquors, the Seventh Circuit stated that alleged price fixing between a manufacturer and its distributors is more properly termed a vertical conspiracy.  Valley Liquors, 822 F.2d at 660, n. 5.  Furthermore, the court determined that the Monsanto standard applies regardless of whether the agreement is horizontal or vertical.  Id.  Therefore, the plaintiff must present evidence "that tends to exclude the possibility that the alleged conspirators acted independently."  Id. at 660.  In examining whether the plaintiff had provided evidence that tended to excluded the possibility that the alleged conspirators acted alone, the court found that the plaintiff had failed to meet this burden because the plaintiff had not provided evidence that the manufacturer had conspired with the distributors to fix prices.  Id. at 661 citing National Marine Electronic Distributors, Inc. v. Raytheon Co., 778 F.2d 190, 192-93 (4th Cir. 1985).  In National Marine, the court stated that in order to conspire to restrain retail price competition there must be some agreement to set, control, fix, maintain, or stabilize prices.  National Marine, 778 F.2d at 193.  When each dealer is free to set its own prices, whether one chooses to allege that the restraint is vertical or horizontal, the lack of a conspiracy to restrain prices leads to the same result.  Id.

      A review of the cases suggests that whether one classifies the agreement as horizontal or vertical is not of consequence in this case because Plaintiff must still prove an agreement to fix the price or price levels after termination.  Therefore, the appropriate analysis is not whether this agreement is vertical or horizontal, but rather whether the Plaintiff has provided sufficient

7

evidence of an agreement to fix price or price levels to withstand a motion for summary judgment.

      2.      <u>Plaintiff has not Provided Sufficient Evidence of an Agreement to Fix the Prices or Price Levels</u>

Plaintiff contends that it has provided sufficient evidence in the record to show that Defendant agreed with the distributors as to the price or price levels to be charged after the termination. In support of this position, Plaintiff relies on the following undisputed facts. First, Defendant approached Plaintiff in 2003 and asked Plaintiff to do something about its prices. On April 23, 2004, one of Defendant's strategic area sales managers drafted an internal memorandum which highlighted the problems with Plaintiff and listed the price margins of Plaintiff and the other distributors on various products. <u>See</u> Pl. Exh. 14. Defendant then contacted the other distributors to ascertain how they would help make up the lost volume of sales if Defendant did in fact terminate Plaintiff.

From these discrete facts, Plaintiff asks this Court to infer that these events imply an agreement between the Defendant and the distributors to set the price or price margin after Plaintiff's termination. Plaintiff's justification for this theory is that since Defendant was aware of the price margins of both Plaintiff and the distributors and had previously asked Plaintiff to raise its prices, then it must have been in an agreement with the distributors as to the appropriate price margins. Plaintiff states since the distributors' price margins remained the same after the termination, this is evidence that the Defendant was in agreement as to what the appropriate price margins should be.

As Plaintiff conceded at the hearing, this evidence is merely inferential. (Hearing Transcript, pgs. 25-27). While circumstantial evidence may be used in an anti-trust case, the

leap that Plaintiff is requesting that this Court take is simply not supported by the rest of the evidence in the record. See Bi-Rite Oil Co. v. Indiana Farm Bureau Coop. Asso., 720 F. Supp. 1363, 1369 (S. D. Ind. 1989) (stating that the range of permissible inferences that can be made from ambiguous evidence in an antitrust claim is limited). Like in National Marine and Bi-Rite Oil, it is undisputed that Defendant never circulated a price list nor suggested the appropriate price margins to the independent distributors either pre- or post-termination. It was the distributors who independently determined the prices they would charge for the product. In fact, Plaintiff acknowledged at the hearing that Defendant did not set the prices and the pre-termination margins were set by the distributors. (Hearing Transcript, pg. 23).

Defendant's mere knowledge of the price margins that the distributors were setting is insufficient to create an inference that Defendant acquiesced these margins in an attempt to stabilize the prices in the market. Although Defendant did engage in conversations with the remaining distributors pre-termination, there is no evidence that Defendant reached an agreement with any of the distributors regarding the post-termination price or price levels during these meetings. Rather, Defendant was attempting to secure the portion of the market share which it would lose when it terminated Plaintiff.

Plaintiff also alleges that the reasons Defendant gave in its termination letter were pretextual, supporting an inference of an agreement to fix prices. Defendant does not dispute that it did in fact terminate Plaintiff based in part upon the complaints of the distributors. However, in accordance with Monsanto, permitting an agreement to be inferred merely from the existence of complaints, or even from the fact that termination came about in response to complaints, could deter or penalize perfectly legitimate conduct. Thus, something more than

9

evidence of complaints about price is needed to prove illegal price fixing.  Monsanto, 465 U.S. at 763.  Defendant's reaction to the complaints was based upon a business decision to retain its larger customers, an act which is appropriate under Monsanto.  Plaintiff has not provided any additional evidence that there was an agreement between Defendant and the distributors as to the price levels.[1]

Reviewing the undisputed facts, Plaintiff has failed to provide sufficient evidence related to an essential element of its claim.  Specifically, Plaintiff has provided insufficient evidence, either direct or circumstantial, of an agreement between the Defendant and the remaining distributors to set the price or price levels after Plaintiff's termination.  Consequently, because the Plaintiff has not provided sufficient evidence upon which a reasonable jury could base its verdict, Defendant is entitled to summary judgment on Plaintiff's claim for a violation of Section 1 of the Sherman Antitrust Act.

## IV.   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM FOR INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS

Plaintiff also asserts a claim for tortious interference with prospective business relations.  In order to prevail on a claim for tortious interference with prospective business relations, Plaintiff must prove: 1) the existence of a business relationship; 2) the defendant's knowledge of the existence of that relationship; 3) the defendant's intentional interference with that relationship; 4) the absence of any justification; and 5) damages.  Levee v. Beeching, 729 N.E.2d

---

[1] At the hearing, Plaintiff repeatedly referred to its "smoking gun" evidence, the internal memorandum circulated by Virginia Tile to its sales staff after it learned of the termination. (Pl. Exh. 19).  The memo states that the termination is the result of conversations that Virginia Tile and Miles Distributors had with Defendant, but that the sales force should not imply, either on or off the record, that the decision was a result of this communication.  Contrary to Plaintiff's assertions, there is nothing in this memorandum which supports an inference that Defendant agreed with Virginia Tile as to the price levels after the termination.  Rather, the memorandum simply indicates what Defendant has already admitted, namely that it had been receiving complaints from the other distributors.  There is no inference in this memorandum that any agreement, of any kind, occurred between Defendant and Virginia Tile.

215, 222 (Ind. Ct. App. 2000).  Where there is no contract, "illegal conduct is an essential element of tortious interference with a business relationship."  Id.  While cases interpreting Indiana law have found that non-criminal illegal acts are sufficient to pursue a claim for tortious interference with a business relationship, Syndicate Sales, Inc. v. Hampshire Paper Corp., 192 F.3d 633, 641-42 (7th Cir. 1999), they do not provide a coherent definition or roadmap of what is considered illegal action for purposes of stating a claim of tortious interference with a business relationship.  See Reginald Martin Agency, Inc. v. Conseco Medical Ins. Co., 2005 WL 2100267 at 9 (S.D. Ind. 2005).

Because the Plaintiff is not alleging a contract theory in this case, the Plaintiff must prove that the Defendant committed an illegal act.  However, there is no evidence in the record that Defendant committed any illegal acts.  As previously discussed Plaintiff has failed to provide sufficient evidence that Defendant engaged in an unreasonable restraint of trade.  As it appears that Plaintiff's claim for tortious interference relies upon its claim for antitrust violations, Plaintiff has failed to prove an element of his claim.  As a result, Defendant's motion for summary judgment on Plaintiff's claim for tortious interference with a business relationship is **GRANTED**.

V. **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM FOR BREACH OF DUTY TO AN AGENT**

The third count of Plaintiff's complaint alleges that Defendant breached its fiduciary duty to its agent by

> conspiring to terminate [Plaintiff] during the pendency of the agency by conspiring to reassign [Plaintiff's] sales to competitors of [Plaintiff], and by concealing these arrangements from [Plaintiff] so that [Plaintiff] could not make other arrangements to maintain its business. (Pl. Comp. ¶ 41).

11

Under Indiana law, agency is established by three elements: 1) a manifestation of consent by the principal over the agent; 2) an acceptance of the authority by the agent, and 3) control exerted by the principal over the agent. Douglas v. Monroe, 743 N.E.2d 1181, 1186 (Ind. Ct. App. 2001). The key issue in this case is the question of control of the Plaintiff by the Defendant.

In situations involving a dealer and manufacturer courts have held that the mere existence of a formal licensing agreement will not create an agency relationship in absence of evidence the principal is exercising control over the details of the agent's purported work. Leon v. Caterpillar Indus. Inc., 69 F.3d 1326, 1334 (7th Cir. 1995). In Leon, the court, partially relying upon the Restatement (Second of Agency) § 14J, found that the district court properly granted a directed verdict because Plaintiff had failed to present evidence showing that Defendant exercised control over Plaintiff's daily operations and that Plaintiff was acting primarily for its own benefit.

The Defendant correctly argues that the breach of duty claim fails because the Defendant did not exercise control over Plaintiff's operations. The parties agree that there was never a distribution agreement between Plaintiff and Defendant and that Defendant did not set or suggest price levels to Plaintiff. In addition, Defendant allowed Plaintiff to sell competitor's products. The Defendant also argues, and the Plaintiff does not dispute, that the Defendant did not have control over Plaintiff's day to day operations such as hiring employees, determining the hours of work, and wages. These factors demonstrate that the Defendant did not exert the necessary control over the Plaintiff to establish an agency relationship.

Plaintiff, however, asserts that Defendant did in fact exercise control over Plaintiff because Defendant expected Plaintiff to promote the product line and visit key customers. Plaintiff understood these to be directives from Defendant.  Even assuming that Defendant did direct Plaintiff to promote the product line and to visit key customers, these facts alone are not sufficient to create a genuine issue of material fact relative to Defendant's control.  See Leon, 69 F.3d at 1334 (finding that requiring the plaintiff to visit the customers did not exhibit the required amount of control over day to day operations when plaintiff set its own prices and was free to enter into agreements with defendant's competitors).

Consequently, because the undisputed facts show that the Defendant did not exercise control over Plaintiff's day to day business operations, Plaintiff has failed to prove that it was Defendant's agent under Indiana law.  See Fioretti v. Aztar Ind. Gaming Co., LLC, 790 N.E.2d 587, 592 (Ind. Ct. App. 2003) (holding that judgment as a matter of law was appropriate when the undisputed facts revealed that there was no agency relationship).  As a result, Defendant's motion for summary judgment on Plaintiff's claim for breach of fiduciary duty to an agent is **GRANTED**.

### VI.   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON ITS COUNTERCLAIM FOR BREACH OF CONTRACT

Defendant has asserted a counterclaim for breach of contract of goods sold and delivered to Plaintiff.  Defendant alleges that it shipped and Plaintiff accepted $118,028.55 in product. Plaintiff does not dispute receiving Defendant's product, nor does Plaintiff dispute that it has failed to pay for the product.  As a result of Plaintiff's lack of objection, this Court may assume that Plaintiff has waived its right to challenge Defendant's counterclaim with regards to liability.

Plaintiff does, however, challenge the amount of damages Defendant is seeking with respect to the goods that were delivered, and accepted, but not paid for. Plaintiff asserts that its records reveal that only $117,253.83 in product was shipped, not the $118,028.55 which Defendant claims. See Pl. Exh. 3. Plaintiff's exhibit does raise a genuine issue of fact as to the amount of damages Defendant should receive on its breach of contract claim. Therefore, Defendant's motion for summary judgment on its counterclaim is **GRANTED IN PART** and **DENIED IN PART**. Defendant's motion as it relates to Plaintiff's liability for the breach of contract is **GRANTED**. However, Defendant's motion as it relates to the damages recoverable due to Plaintiff's breach is **DENIED**. The sole issue of damages as it relates to Defendant's counterclaim shall proceed to trial.

### VII. ANCILLARY MATTERS

As advised at the hearing, both parties erroneously filed materials under seal which did not contain proprietary business information. In accordance with this Court's order, both parties have now resubmitted their memorandums electronically. Therefore, the parties' memorandums which were incorrectly filed under seal, Document Numbers 53, 59, and 63, are **STRICKEN**. Because the parties' exhibits are attached to these memorandums, parties shall refile their exhibits so that record will be complete.

### VIII. CONCLUSION

For the aforementioned reasons, this Court rules as follows:

- Defendant's motion for summary judgment [Doc. No. 49] is **GRANTED IN PART** and **DENIED IN PART;**
    - Defendant's motion as it relates to Plaintiff's claims for a violation of Section One of the Sherman Antitrust Act, tortious interference

- with a business relationship, and breach of duty to an agent is **GRANTED**;

- Defendant's motion as it relates to its counterclaim for breach of contract is **GRANTED** as to liability only;

  - Defendant's motion as it relates to the damages associated with the breach of contract counterclaim is **DENIED.**

- **STRIKES** Document Numbers 53, 59, and 63.  Parties shall refile their exhibits so that the record will be complete.

This matter is now scheduled for a telephonic status conference on **April 13, 2006**, at **10:00 a.m. (E.S.T)** to address the current status of this case.

**SO ORDERED.**

Dated this 27th Day of February, 2006.

<u>s/Christopher A. Nuechterlein</u>
Christopher A. Nuechterlein
United States Magistrate Judge